CLEMENTS *et al. v.* FLETCHER *et al.; et vice versa.*

1. The court below did not err in refusing to recommit the case to the auditor.

2. The court below did not err in overruling the defendants' exceptions to the auditor's findings of law.

3. The trial court did not err in overruling the defendants' exceptions to certain findings of fact by the auditor.

(*a*) The erroneous disallowance of the exception by the executor to the auditor's finding of fact that the executor had collected a note due the estate for $5,000, with which he was charged by the auditor, the exception being that such finding was without evidence to support it, does not require a reversal of the final decree in which the executor was relieved from said surcharge, and the error of the disallowance of said exception was rendered harmless.

(*b*) Where an executor claims compensation for extra services, the nature, character, extent, and value of such services must be satisfactorily proved by him; and in the absence of such showing, the refusal of the lower court to approve an exception to the auditor's finding of fact that the executor rendered no extra services will not be reversed where it appears that another finding of the auditor allows the executor compensation for all extra services so proved by the evidence.

(*c*) An order of the ordinary, allowing the executor extra compensation, is not conclusive upon the parties at interest. Conceding that the ordinary had jurisdiction to pass such order after the superior court had taken jurisdiction of the accounts of the executor, and that the burden was on the legatees attacking such order to show that it was improperly granted, such burden was successfully carried under the showing made by the executor.

(*d*) An executor can employ counsel for the protection of the estate he represents, and should be allowed proper payment for such services. Where there is no actual misconduct in the administration, but only a charge of it, the executor should be allowed a reasonable amount to retain counsel to resist an unjust charge; but the object of allowing counsel is not to extricate him from difficulties due to his own fault or misconduct.

(*e*) Where legatees bring an equitable petition against an executor for his removal, for appointment of a receiver for the estate, and for an accounting and settlement, and the executor employs counsel to resist all of these objects, and is successful in defeating his removal and the appointment of a receiver, but is not successful in defeating an accounting and settlement, he would not be entitled to credit for payments to his counsel, especially when the value of the services of counsel in resisting his removal and the appointment of a receiver is not shown.

4. Legatees are not entitled to recover from an executor, who failed to give his assent to devises of land to them and put them in possession thereof when he should have done so in the due administration of the estate, the difference between the value of the lands at such time and their decreased value at the time of their distribution among the legatees.

(*a*) An executor who failed to make annual returns, but obtained a spe-

cial order from the ordinary, which was spread upon the minutes of that officer, relieving him from the forfeiture of his commissions for such neglect, would be entitled to his commissions, notwithstanding such default.

(b) Where the will provided for reasonable compensation to the executor instead of commissions, such order would relieve the executor from forfeiture of such compensation by reason of such failure to make returns.

(c) It can not be said, as a matter of law, that the executor forfeited all compensation by reason of his neglect or misconduct in the administration of the estate; and it follows that this court can not say that the trial judge erred in approving an exception to the conclusion of the auditor that the executor had forfeited all compensation because of such neglect and misconduct, and in holding, in passing on such exception, that the executor had not forfeited his compensation; the hearing of all approved exceptions of fact having been submitted to the judge without the intervention of a jury.

(d) Where within the time required by law a party files exceptions to the auditor's report, but neglects to set forth in connection with such exception the evidence necessary to be considered in passing thereon, or to point out the same by proper reference, or to attach it as exhibits to his exceptions, such exceptions can be thereafter amended so as to cure these defects.

Nos. 4634, 4640. September 16, 1925.

Equitable petition. Before Judge Eve. Irwin superior court. September 20, 1924.

John Fletcher and other legatees of John Fletcher Sr., who died testate, and A. B. C. Dorminey, who alleged that he had purchased the interest of James Fletcher, one of these legatees, filed their equitable petition against J. B. Clements individually, and as the executor of J. W. Fletcher Sr., and as trustee of John, Daisy, and Eddie Fletcher, and against the National Surety Company, as surety upon the bond of said executor; in which they prayed for settlement and accounting of the estate in the hands of the executor, for a receiver, and for other equitable relief. The case was referred to an auditor, at the November term, 1923, of Irwin superior court. The order of reference provided that the auditor should make his report to the February term, 1924, but provided that the auditor could make his report after the latter term if for any reason he could not file the same by that term. The auditor filed his report on July 12, 1924.

J. B. Clements individually, and as executor, moved to recommit the case to the auditor, upon twenty-three grounds, all of which will sufficiently appear from the opinion. He likewise filed exceptions of law to the report of the auditor, which the court disal-

lowed.  These exceptions are: (1) That the auditor in his finding
of law, after having excluded evidence offered by the plaintiffs,
tending to show the decreased value of the lands of the estate at
the time of their distribution among the general legatees, as com-
pared with their value when they were appraised, and their in-
creased value in 1921, erred in considering the same for any pur-
pose.  (2) In the 7th finding of law the auditor excluded the tes-
timony of a witness that there was contention on the part of one
of the testator's sons and his widow that the money left by the tes-
tator belonged to them, as well as he remembered, on the ground
that the same was irrelevant; the exception to this ruling being
that in the 41st paragraph of plaintiffs' amendment it was alleged
that the executor had conceived the idea of trying to hold certain
funds adversely to the estate, and placed them to his credit as
trustee of Mary Jane, Jehu, and Henry Fletcher, and that it was
not until Joe Fletcher went to the Bank of Irwinville to try to as-
certain the condition of said fund, long after it had been thus
deposited, that the deposit was changed to the estate; and for this
reason this evidence was relevant, especially when taken in connec-
tion with the testimony of the executor that Mrs. Fletcher turned
over to him $15,770, and told him old man John told her to give
some money to Henry and some to Jehu, and that she could keep
the balance; the executor taking this money and depositing it in
the Exchange National Bank to his credit as trustee.  (3) That
in the 8th finding of law the auditor excluded the testimony of a
witness, that, on account of a contention as to whom the money be-
longed to, Judge Clements put the money in the Bank of Irwin-
ville as trustee, on the ground that the same was irrelevant; the
exception being that it was relevant for the reasons set out in deal-
ing with the next preceding exception.  (4) That in the 10th
finding of law the auditor, over objection on the grounds that it
was irrelevant, that there were no pleadings to authorize it, and
that it was a conclusion of the witness, permitted a witness to
testify that if the heirs could have got possession of the lands in-
volved in 1919, 1920, or 1921, they could have gotten four times
as much rent as the executor got.  (5) That in the 11th finding
of law the auditor permitted a witness to testify, over the objec-
tions of the executor that it was irrelevant and that there was no
pleading to authorize it, that the land of the estate given to the

general legatees, and which they got in 1921, would have been worth $20 per acre if they could have got it in the time from 1918 to 1921. (6) That in the 16th finding of law the auditor admitted, over objection, the testimony of J. B. Clements to the effect that he drew the will himself at the testator's house, and that he got a pencil or pen and ink and got it just like he wanted it, and carried it to Fitzgerald and had it typewritten and took it back to testator's house; to which ruling the executor excepts on the grounds, (a) that the court erred in admitting the testimony over defendant's objection; (b) that this finding does not correctly state the testimony of the witness, in that it apparently purposely and designedly seeks to convey and leave the impression that this defendant testified that he got the will just like he, defendant, wanted it, when the testimony of the defendant shows that he got the will just like the testator wanted it. (7) That in the 19th finding of law the auditor rejected the testimony of a witness that he was approached by some of the heirs of the estate before Mr. Fletcher was buried, to contest the probate of his will; this testimony being ruled out upon the objection that it was irrelevant and immaterial. The defendant excepted to this ruling, upon the grounds, (a) that it was erroneous; (b) that the testimony was relevant; and (c) that plaintiffs contended that animosity existed on the part of the executor to them.

The defendant filed various exceptions to the auditor's findings of fact. The trial judge overruled certain of these exceptions. As numbered they are: (2) To the finding of the auditor, "That this series of litigation terminated February 1, 1918," on the ground that there is no evidence to support such finding. (3) The 4th finding of fact by the auditor is that "The executor made no annual reports as executor, that he filed the appraisement of the estate made out by the appraisers, that he made report of the sale of the perishable property on January 18, 1918, and of the cattle and sheep on January 8, 1918, that he filed a report setting out his receipts and expenditures in connection with the litigation before Judge Eve, arising in June, 1921, on the hearing for a receiver in this proceeding, and that the same report was filed in the ordinary's court in December, 1923, and that aside from this the executor made no other reports of his receipts and expenses." The exceptions to this finding are, (a) that it is not supported by

the evidence, and (b) that the reports filed in the courts as aforesaid are not the same. (4) In his eighth finding of fact the auditor finds that the executor performed no extra services in connection with the administration of the estate, that the tenants to whom he rented the lands of the estate brought the rents to him without any extra service on his part, and that the legatees entitled thereto divided the lands in kind among themselves without any service on the part of the executor, except his approval of the division; and to this finding the executor excepts upon the grounds, (a) that it is contrary to the evidence and the weight of the evidence, (b) that it is without evidence to support it, and (c) that the uncontradicted evidence shows that the executor did perform extra services. (8) In his 13th finding of fact the auditor found that all the litigation hindering the administration of the estate terminated in January, 1918, and that there was no injunction against the sale of the cattle, and that they were sold on January 17, 1918; and to this finding the executor excepts upon the grounds, (a) that said finding is without evidence to support it, (b) that it is contrary to the evidence, and (c) that there was a restraining order against the sale of the cattle, and subsequently a supersedeas was granted thereon. (9) In his 14th finding of fact the auditor found that there was no obstacle preventing the distribution of the estate on February 1, 1919; and to this finding the executor excepts on the grounds, (a) that it is not supported by the testimony, (b) that it is contrary to the evidence, (c) because by the terms of the will the executor was authorized in his discretion to hold the estate together for a reasonable period of time, and (d) that the uncontradicted evidence shows that in the exercise of this discretion the executor did not deem it advisable at the time to sell the lands belonging to the estate, and that it was impossible to satisfactorily divide said lands in kind. (10) In his 15th finding of fact the auditor found that the only contested claim against the estate was the United States' claim for taxes, amounting in the aggregate to $1362.53, which was paid by the executor in two installments, to wit, September 15, 1919, $554.44, and May 21, 1921, $810.09; that the amount paid was that originally assessed by the government, and that the executor had in hand in 1919 sufficient funds of the estate with which to pay the same in full and as soon as assessed; and to this ruling the defendant excepts

on the ground that said finding is unfair to him, in that it fails to state that he was in good faith contesting the amount of the Federal estate tax during all of the times in said finding referred to, and that the payment of September 15, 1919, represents the amount of said tax which was not discharged by him. (12) In the 17th finding of fact the auditor found that all of the litigation brought by the legatees against the executor in 1921, and subsequently thereto, was for the purpose of obtaining distribution of the estate, and was caused by the refusal of the executor to distribute the estate and make an accounting therefor; and to this finding the executor excepts upon the grounds, (a) that the same is contrary to and without evidence to support it, and (b) because the petitions filed by the legatees in Ben Hill County and Irwin County show that said litigation was brought for the purpose of ousting defendant as executor, and for the purpose of having a receiver appointed to take charge of and administer the estate. (14) In his 38th finding of fact the auditor found that the executor, prior to February 1, 1919, collected the sum of $5,000 on a note of J. M. Willis; and to this finding the executor excepts on the ground that it was without evidence to support it. (15) In his 43d finding of fact the auditor found that the executor is, and was at the time of the death of the testator, president and owner of the majority of the stock of the Bank of Irwinville; and to this finding the defendant excepts on the grounds, (a) that it is without evidence to support it, and (b) that it is immaterial. (16) In his 48th and 49th findings of fact the auditor found that February 1, 1919, was a reasonable date on which the estate could have been distributed, the only collections made after that date being certain items specified, and that the evidence fails to show any reason why these items could not have been collected prior to February 1, 1919; and to this finding the defendant excepts on the grounds, (a) that it is without evidence to support it, (b) that it is contrary to the evidence, (c) that the burden was on the plaintiffs to show that the items therein referred to could have been collected prior to February 1, 1919, while the finding puts this burden upon the defendant, and (d) that said finding does not show what note was collected on 9-24-20. (17) In his 15th finding of fact the auditor found February 1, 1919, as the date from which interest accounting is to be made against the executor un-

der § 4077 of the Code; and to this finding the defendant excepts on the grounds, (a) that it is without evidence to support it, (b) that it is contrary to the evidence, (c) that said finding fixes an arbitrary date, and (d) that it is based upon an erroneous construction of said section of the Code. (20) In his 51st finding of fact the auditor found, among other items, that the executor had collected $5,000 on February 1, 1919, on note of J. M. Willis; that he had also collected a time certificate belonging to the testator on the Bank of Irwinville for $2163.72; and also charges the executor with $830.24 up to February 1, 1919, on his note to the testator; and to this finding the defendant excepts on the grounds, (a) that there is not sufficient evidence to authorize the finding, (b) that the evidence taken as a whole shows that the note referred to as that of J. M. Willis was a note of Norman Stokes & Company, of which firm Willis was a member, (c) that the evidence does not show that said time certificate had been collected by the executor between April 24, 1917, and February 1, 1919, and (d) that the finding that the amount of principal and interest of the note of J. B. Clements amounted to $830.24, as cash in the hands of the executor, is without evidence to support it, and that the uncontradicted evidence of J. B. Clements, the executor, shows that the said note had not been collected at the time of the hearing on December 17, 1923. (21) In the 53d finding of fact the auditor found that the items of interest earned and chargeable to the executor up to February 1, 1919, were as follows: (1) Aggregate of interest earned on various items of collections made by the executor from February 1, 1918, to February 1, 1919, inclusive, at 4-1/2 per cent. per annum from the respective dates of each item, $384.68; (2) 5 per cent. interest earned on $16,850.67 from May 1, 1917, to February 1, 1918, $648.87; (3) 4-1/2 per cent. interest earned on $16,850.67 from February 1, 1918, to February 1, 1919, $758.25; (4) 5 per cent. interest earned on time certificate $2163.72, on the Bank of Irwinville, from February 1, 1917, to February 1, 1919, $210.34. To this finding the defendant excepts on the grounds, (a) that it does not appear from said finding what were the various items of collections made by the executor between February 1, 1918, and February 1, 1919, nor when such collections were made, and for what period of time the interest is computed on them, and because said finding is too vague and uncertain, for

which reason it is impossible for defendant to ascertain for what amounts and for what periods of time he is chargeable with interest, and (b) that there is no evidence to show that the defendant collected $210.34 interest on the said time certificate on the Bank of Irwinville. (22) In his 54th finding of fact the auditor finds the cash balance in the hands of the executor on each of the dates 2-1-19, 2-1-20, 2-1-21, 2-1-22, and 2-1-23, with the estimated expenses for each of the years following each of said dates, and with interest upon each yearly balance, after deducting the annual yearly expense, for each of said years, with the total interest charges covered in this finding of fact and in the preceding finding of fact; and to this finding of fact the defendant excepts on the grounds, (a) that it fails to show what items were included in the cash balance found to be in the hands of the executor on February 1, 1919, (b) that it is impossible to ascertain what items were included in said cash balance, and what expenditures of the executor were allowed by the auditor and what were disallowed, (c) that there is included in said cash balance and each subsequent cash balance $5,000 which the auditor erroneously found the executor had collected on the note of J. M. Willis, the sum of $2,362.71 which the auditor erroneously found that the executor had collected on the time certificate of the Bank of Irwinville, and there is included in said cash balance the sum of $830.24, which the defendant affirmatively shows had not been collected on the note of the executor, and (d) because the uncontradicted evidence shows that the executor had charged himself in his report with every item of interest which he had collected. (24) In his 56th finding of fact the auditor gives the uncollected assets in the hands of the executor; and to this finding the executor excepts on the ground that it is incomplete, because the time certificate of the Bank of Irwinville and the foregoing note of the executor are not embraced therein. (25) The defendant excepts to the report of the auditor, upon the ground that the same was not filed within the time required by the order of the court, and because the provision of the order of reference that if for any reason the auditor was not ready to make his report at the next term, he should have the right to make said report by the first term after he was ready, is void because the court was without authority to insert said provision in the order.

The executor filed exceptions to the auditor's conclusions of law

and of fact. The court disapproved in part exceptions Nos. 2 and 4, and disapproved exceptions Nos. 5, 6, 7, and 8. The exceptions thus disapproved were as follows: (2) The auditor found that the executor was required under the law to make annual returns of his actings and doings as executor, and that by his failure to do so he forfeited the compensation allowed him by law and under the will of the testator. The trial judge approved the exception to this finding, except the portion which found that the law required the executor to make annual returns. (4) The auditor found that the will contemplated that the executor should wind up the estate promptly, and that the discretion given the executor in the will as to selling the lands of the general legatees or dividing them in kind was to be exercised within one year from the cessation of the injunctive litigation, which ended prior to February 1, 1918. To this finding the executor excepted on the gorunds, (a) that the evidence did not authorize it, and (b) that it was a misconstruction of the will of the testator. The court approved this finding, except that portion which found that the injunctive litigation ended prior to February 1, 1918. (5) The auditor found that the estate should have been administered and distributed among the legatees by February 1, 1919, and that nothing prevented the final winding up of the estate and dismissal of the executor during the year 1919. The defendant excepted to this finding, on the grounds, (a) that there was no evidence to support it, (b) that the evidence showed that the estate could not have been administered and distributed by that date, and (c) because the auditor's report shows at that time notes due the estate had not been reduced to cash. (6) The auditor found that the payments made by the executor, in findings of fact Nos. 18, 19, and 20, were incurred solely by reason of the laches and refusal of the executor to distribute the estate, that said payments were improper charges against the estate, and that the executor should not be given credit for them. The defendant excepted to this finding, upon the grounds, (a) that it was without evidence to support it, in that it appears from the finding of facts reported by the auditor that said items were amounts paid by the executor as attorneys' fees, that these amounts were reasonable, and that these services were rendered by the attorneys in suits brought by the plaintiffs against the defendant as executor, charging him with fraud and malfeasance in the

discharge of his duties, and praying that he be removed and that a receiver be appointed, that a portion of the litigation was filed in the superior court of Ben Hill County, which court was without jurisdiction of the cause, that in one of the suits a receiver was appointed, but the judgment of the superior court appointing the receiver was reversed by the Supreme Court; (b) that said finding as a conclusion of law is erroneous, because the defendant had a right to employ counsel to protect said estate against unfounded suits seeking to take the same out of his hands when not fully administered; and (c) because the items of costs referred to in the 19th finding of fact were costs incurred by the defendant in appealing certain litigation to the Supreme Court, one of which was reversed, and as to this item the conclusions of law and fact are erroneous. (7) The auditor found that the net amount of money for distribution should be distributed among the legatees as set out in finding of fact No. 37, upon the basis of the particular portion and the cash advances which are set opposite each name as shown in said finding of fact. To this conclusion of law and fact the defendant excepted on the grounds, (a) that it is entirely too indefinite to form the basis of any judgment, and (b) that it is unintelligible. Finding of fact No. 37 states the portion of the estate to which each legatee is entitled and the amount that each legatee had been paid upon his legacy. (8) The auditor found that the executor, after February 1, 1919, should be charged with interest on the basis set out in § 4707 of the Code of 1910, deducting the estimated amount of expenses for the current year and calculating interest on the balance at the rate of seven per cent. per annum, and not in any case compounding the interest in this calculation. To this finding the defendant excepted upon the grounds, (a) that the undisputed evidence shows that the interest earned was at the rate of 4-1/2 and 5 per cent., and that all interest collected was reported, and under the law the executor can only be charged with the amount of interest earned, unless it be affirmatively shown, as it was not, that he could have earned more, and (b) that said section was not applicable and binding. To the ruling of the trial judge disapproving the above exceptions, the executor excepted.

The auditor found that the estate was involved in considerable litigation. The petition to probate the will in solemn form was

filed on May 8, 1917. A caveat to its probate was filed on June 4, 1917. On June 15th, 1917, appeal was taken to the superior court. A verdict was rendered in the latter court in favor of the propounder, at the October term, 1917. A motion for new trial was filed; order dismissing this motion was passed on January 19, 1918. Certain legatees filed a petition for injunction against the nominated executor, to enjoin him from changing the status of the estate until the validity of the will could be determined. Later this proceeding was withdrawn. On August 11, 1917, Joe Fletcher and other legatees filed an equitable petition against the executor, to enjoin him from selling the cattle of the estate. All of the above litigation had terminated prior to February 1, 1918, although the judgment of the Supreme Court affirming the judgment of the lower court in the case involving the sale of the cattle was not rendered until March 12, 1918. The auditor denominates the above cases as the first series of litigation in which the estate was involved. In 1921, prior to June 28, the legatees filed an equitable petition in Ben Hill superior court against the executor and National Surety Company, the surety on his bond, for an accounting, removal of the executor, appointment of a receiver, and for a settlement of the estate. This petition was dismissed on demurrer. On June 28, 1921, the legatees filed a similar petition for the above purposes against the executor and the surety upon his bond. Separate demurrers and answers were filed by each defendant. Various amendments to the petitions and answers were made. On the hearing of the application to remove the executor and appoint a receiver, the court refused to do either. The court overruled the demurrers of the defendants to the petition. The defendants sued out a writ of error and took the case to the Supreme Court, where the judgment of the lower court was affirmed on October 10, 1922. On August 19, 1921, plaintiffs filed an amendment to their petition, in which they sought to have the executor removed, a receiver appointed, and a division of the lands in kind. This was followed by a division of the lands in kind, approved by the executor. No receiver was appointed. On June 14, 1922, plaintiffs filed an ancillary proceeding to their original petition, renewing their application for a receiver. On July 7, 1922, the presiding judge notified all the parties that on July 15, 1922, for the reasons fully stated in his order of that date, he would appoint

a receiver. On said date the receiver was appointed. Following this, contempt proceedings were instituted by the receiver against the executor and his counsel. The latter filed answers and demurrers. On August 19, 1922, the defendants sued out writs of error to the Supreme Court, excepting to the judgment appointing a receiver; and this judgment was reversed by the latter court prior to the appointment of the auditor. The auditor denominates the last named suits as "The second series of litigation."

The executor paid his attorneys for their services in the first series of litigation $1,650, which was allowed by the auditor and by the superior court. The executor paid to his attorneys for their services in the second series of litigation the aggregate sum of $2,000. These payments were contested by the plaintiffs. The auditor found that the amounts for these services were reasonable, and disallowed them as charges against the estate. The first item of this amount was $500 paid to H. J. Quincey on July 11, 1921, for his fees in Joe Fletcher et al. v. J. B. Clements. The second item was for the same amount, paid on the same date, to J. B. Wall, for attorney's fees in the same case. Another item was for $250 paid on June 30, 1923, to Quincey & Rice, for balance of fee in Fletcher v. Clements, executor. Another item was for $250 paid on June 23, 1923, to Wall & Grantham, on fee in case of Fletcher v. Clements, executor. Another item was for $250 paid to Quincey & Rice, on June 23, 1923, on fee in case of Fletcher v. Clements, executor. Another item was for $250 paid to Wall & Grantham on June 30, 1923, in case of Fletcher v. Clements, executor. The executor testified that all of these fees were paid for services in this case.

In reference to the services rendered by him to the estate, the executor testified as follows: I made as many as two, and it seems like there were three trips to Tifton to look after this litigation. The distance is 18 miles. My hotel bill was about $1. It consumed a day every time I went there. It is 39 miles from Irwinville to Cordele. I incurred a hotel bill while there. I don't remember the amount exactly, but I think I had dinner and supper there. I had a room there at one time. I think that would be about $2 for a room. In making trips to Atlanta I incurred Pullman fare. I went and came in the night. Pullman fare to Atlanta is something like $3 each way. The railroad fare is $4.85

each way. I had a room while in Atlanta; it cost $2.50. There are times when my time is worth lots more than at others. I hardly know how to price it. I think when they carry people off to attend Federal court hearings they allow them $25 per day. I think my time is worth that. Some times it is worth considerably more than that. While renting this land I managed the money belonging to the estate, and was endeavoring in other ways to collect the assets of the estate. I did other things than managing the farm. I sheared the sheep one year. I haven't charged the estate anything for services up to this time. At the end of the year 1917 my receipts from all sources was $21,614.40, and I paid out $5,671.02. When I estimated my services as being worth $1,000 above the legal commissions, that was for managing the whole estate. I don't believe that any man would take the responsibility which I have had in managing old man John's estate for six years for $2,000 a year; and if it was fixed at what the law gives me, that would make a little over $10,000. To manage an estate of the appraised value of $100,000 and to have been through the mill like I have with it, I don't believe a qualified man would take the job for $2,000 a year. If I could have known what was ahead of me, I wouldn't have taken it for the whole estate.

After the filing of this suit the executor applied to the ordinary to be relieved from the forfeiture of his commissions. In his application he alleged that he had failed to make regular annual returns, for the reason that, until the estate got into litigation and he was advised by counsel that he was required to make returns, he did not think that it was incumbent upon him to make any returns to the ordinary, he believing that under the terms of the will it was not necessary for him to make the same, especially in view of the fact that he had given a $100,000 bond as executor. He further alleged that when returns were requested of him he made a full and complete return to the superior court, which at the time and since has been exercising jurisdiction in the premises. Prior and subsequently to that time he kept an adequate, accurate, and intelligent record of every cent received and disbursed by him as said executor, and his failure to make such returns is attributable to no desire to conceal anything in the administration of the estate. The estate has been continuously in litigation, brought by the heirs and legatees, since the death of the testator, and for a

large part of the time he has acted as executor he has been enjoined from administering said estate. He further alleged that said estate had already been largely administered, and the various interests of the legatees had been largely distributed to them, and but for said litigation the estate would have been fully administered. On December 14, 1923, the ordinary passed an order relieving the executor from the forfeiture of his commissions.

On December 13, 1923, after the institution of this suit, the executor applied to the ordinary for the allowance of extra compensation. In this application he alleged that he had performed an unusual amount of work, had spent an unusual amount of time, and had undergone an unusual amount of humiliation and worry by reason of the stubborn litigiousness of the heirs and legatees. Before the funeral of testator lawyers had been approached for the purpose of contesting his will, which was subsequently done. When the will was offered for probate it was caveated by the legatees. An appeal was taken to the superior court, which resulted in the probate of the will and the nominating of petitioner as executor. A motion for new trial was filed, and pended for months. Petitioner offered the personal property of the estate for sale. The sale was enjoined as to a portion of it. When the injunction was dissolved, it was appealed. The delay occasioned by the injunction resulted in a loss of $1,300 to the estate. Petitioner turned over to the legatees the lands devised to them. A petition was then brought in Ben Hill superior court to remove him as executor and turn the estate over to a receiver, in seeking to enjoin him from further administering the estate. This petition was dismissed on demurrer. It was afterwards filed in Irwin superior court. Two interlocutory hearings were held in Tift County on this petition, and one in Irwin County on the ancillary petition. The judge of the superior court enjoined petitioner from further administering the estate, and ordered him to turn the estate over to a receiver. The order granting the injunction and appointing the receiver remained in force until reversed by the Supreme Court. Upon the failure of petitioner to comply with the order, under advice of counsel, he and his counsel were cited for contempt of court, supersedeas having been refused by the lower court and granted by the Supreme Court. The order of the ordinary and appraisers setting aside a year's support to the widow was caveated

and litigated. The real estate of testator was appraised at $44,-603, and the Federal government insisted upon a valuation of $72,800 for the purpose of collecting inheritance taxes. He negotiated with the authorities and for a long period endeavored to get these taxes reduced, but was finally forced to pay them. The will provides that petitioner shall have reasonable compensation for administering said estate. He prayed that extra compensation be allowed him. The petition was verified. The ordinary allowed the executor $6,000 as extra compensation, by order passed on December 14, 1923; and the proceeding was ex parte.

In the writ of error by the plaintiffs certain rulings of the court are excepted to. The court sustained the executor's exceptions of fact Nos. 5, 6, 7, 11, 13, 18, 19, 22, and 23 to the auditor's findings of fact. The plaintiffs insisted only on Nos. 6, 13, 19, and 23. These exceptions are as follows: (6) The auditor found that the evidence shows no reason why the executor should be relieved from the forfeiture of his commissions or compensation for failure to make his reports as required by law. To this finding of fact the executor excepted on the grounds, (a) that it is contrary to the evidence and the law; (b) that it is without evidence to support it; (c) that the court of ordinary is the only tribunal having jurisdiction to determine whether or not the defendant should be relieved of the forfeiture of his commissions for a failure to make returns, and that court has by proper order relieved the forfeiture; (d) because said finding deprives the defendant of all compensation for his services as executor, when the undisputed evidence shows that for 1921 and 1923 he made returns as executor, and for those years he is entitled to compensation; (e) that the evidence shows that the executor had a reasonable excuse for not making returns and shows that no injury resulted to the estate by his failure to make them; (f) because said finding takes from him the extra compensation which he is by law and under the evidence entitled to receive, and because the provision of the Code for the forfeiture of commissions applies to regular commissions only. (13) The auditor found that the market value of the lands of the estate in 1919 and 1920 was an average of $20 per acre, that the value thereof at the time of the division of the ·same among the general legatees was $7.50 per acre, and that the difference between those two values is $23,504. To this finding the defendant

excepts on the grounds, (a) that the uncontradicted evidence shows that the lands of the estate had been divided in kind by the legatees themselves, on their own motion, and therefore any finding of fact with reference to their value is improper; (b) because said finding is without evidence to support it; and (c) because said finding is based on evidence which was excluded by the court. (19) In his 52d finding of fact the auditor sets out a table which shows a cash balance in the hands of the executor on 12-17-23, $29,697.75. This table begins with the gross cash and collections from April 24, 1917, to February 1, 1919, amounting to $49,142.50. ' To this finding the executor excepted on the grounds, (a) that said amount of $49,142.50 included $5,000 erroneously found to have been collected by the executor from J. M. Willis; (b) because the authorized expenditures with each period embraced in this table fails to show what items are included therein; (c) because each balance in said table includes the amount of the said Willis note; (d) because the cash balance in the hands of the executor on February 1, 1919, includes the time certificate on the Bank of Irwinville for $2,163.72, which is not shown by the evidence to have been reduced to cash, and should not be charged as cash against the executor; and (e) because said balance includes the note of the executor amounting to $830.24, which the evidence does not show had been reduced to cash. (23) The 55th finding of fact reported by the auditor contains a table showing a net balance chargeable to the executor as of 12-17-23, $44,374.41. To this finding the executor excepts upon the grounds, (a) that the report of the auditor does not set out the specific items going to make up the total so found; (b) because it includes the amount of the Willis note; and (c) because it does not set out the items of collections and the items of authorized expenditures.

The court overruled the exceptions of law filed by the plaintiffs. These exceptions were as follows: (1) The auditor excluded testimony offered by the plaintiffs, that the lands of the estate were worth the amount of the appraised value in 1917, that from 1917 to 1921 the value of said lands had increased double, that since 1921 the value of said lands decreased half, and that the lands would bring about one third of what they would have brought in 1920. This evidence was excluded on the objection of the defendant that it was irrelevant. To this ruling the plaintiffs excepted

upon the ground that it was relevant to sustain their claim that they were entitled to recover from the executor the difference in the values of the land at the time the executor should have turned it over to them and the time they received the same. (2) The auditor excluded evidence offered by the plaintiffs, showing that the land of the estate going to the general legatees, and which they got in 1921, would have been worth $20 per acre if they could have got it in the time between 1918 and 1921. This evidence was excluded upon objection of the defendant that it was irrelevant. To this ruling the plaintiffs excepted on the grounds specified in the exception next above. (3) The auditor found that the heirs voluntarily accepted said lands in the division in kind, and in accepting the same they made no claim for the decrease in the value against the executor, nor did they make any protest against the land not having been sold by the executor. To this finding the plaintiffs excepted on the grounds, (a) that under their petition they were protesting because the executor would not consent to the legatees dividing the estate, and (b) because the finding is without evidence to support it. (4) The auditor found that the general legatees accepting the land under the general division in kind are not entitled to collect out of the executor any loss in the value of the lands between the years 1918, 1919, and 1920 and the date of the division in kind. To this ruling the plaintiffs excepted on the grounds, (a) that the facts under which they received these lands in kind would not prevent them under the law from recovering from the executor for the decreased value, and (b) because the auditor found as a matter of fact that the lands had decreased in the sum of $23,504. To the judgment of the court overruling the exceptions of law the plaintiffs excepted.

The plaintiffs moved to dismiss the executor's exceptions of fact Nos. 6, 13, 19, and 23, upon the ground that the evidence was not set out in said exceptions, nor attached as an exhibit thereto, nor was the evidence referred to in any way in any of said exceptions. Whereupon the executor filed an amendment to said exceptions to meet this objection. The plaintiffs objected to the allowing of said amendment, upon the ground that the same was offered too late, being more than twenty days since the filing of the auditor's report. The court overruled this objection and allowed this amendment. To this ruling the plaintiffs excepted.

*A. J. & J. C. McDonald* and *Rogers & Rogers,* for plaintiffs.

*Quincey & Rice* and *Wall & Grantham,* for defendant Clements.

*Harris, Harris & Popper,* for National Surety Company.

HINES, J. (After stating the foregoing facts.)

1. James B. Clements as executor, as trustee, and individually, he in these three capacities being the plaintiff in error in No. 4634, moved to recommit this case to the auditor, upon twenty-three grounds. The trial judge overruled this motion, and to this ruling the movant excepted. So the first question for decision is, whether or not the court erred in refusing to recommit this case to the auditor. The first ground of this motion is based upon the fact that the report was not filed by the auditor within the time limited by the order of reference, which provided that the report should be filed by the next term of the court, but provided that if for any reason the report was not filed by the next term of the court it could be filed thereafter. The second ground of the motion to recommit is based upon the contention that the judge was without power to insert in the order of reference this latter provision. These two grounds of the motion are without merit. The trial judge was authorized to pass the order of reference, with both of the above provisions therein. The contention that the lower court could pass no order of reference which would be of force and effect beyond the next succeeding term of the court is not based upon sound reasoning, and counsel for the movant has failed to produce any authority sustaining such contention. Interlocutory orders are binding upon the parties in a case throughout the litigation, unless they are set aside either by the lower court or by a higher court.

The third ground of the motion to recommit is founded upon the assertion that the second finding of fact is inconsistent with the finding of facts reported by the auditor in the eighth and ninth findings of fact. In the second finding of fact the auditor reported that "Considerable litigation arose concerning this estate, and that in point of time they divide themselves into two series." He then sets out in detail the two series. In the eighth finding of fact the auditor found "that the executor performed no extra services in connection with the administration of this estate;" and in the ninth finding the auditor found that the regular commissions provided by law were reasonable compensation for the services render-

ed by the executor. All these things can coexist in harmony. Properly construed, the eighth finding of fact means that the executor performed no extra services in the ordinary and regular administration of the estate, such as renting out the land, receiving the rents, collecting the debts, and in the distribution of the estate. This is made clear when these three findings of fact are considered in connection with the whole report, and especially with the finding of fact No. 41, in which the auditor found that the executor was entitled to compensation for expenses incurred and time expended in connection with the first series of the litigation referred to in the second finding of fact. It follows that the court below did not err in refusing to recommit the cause upon this ground.

The fourth ground of the motion to recommit is that the auditor finds in his twenty-sixth finding of fact that the executor paid $586.64 as premiums on his security bond, thus extending the same beyond May 9, 1920, but fails in his findings of law or fact, or his conclusions of law and fact, to either allow or disallow this expenditure, and thus renders it impossible to tell from the report whether this expenditure has been allowed to the executor or not. Standing alone, this criticism of this finding of fact would seem to have merit in it; but when considered in connection with the full report of the auditor, this exception is without merit. The executor filed in this case his return which purported to include all receipts and collections made by him, and all expenditures incurred by him in the administration of this estate. In his finding of fact No. 42 the auditor found that with the exception of the collections referred to in findings of fact Nos. 38, 39, and 40, and with the exception of the expenses allowed the executor in his finding of fact No. 41, the executor's return is a correct statement of the collections, receipts, and expenditures by the executor and of the dates thereof. This necessarily means that the auditor found that all credits claimed by the executor were correct. This report of the executor shows that he credited himself with the amounts specified in finding of fact No. 26. It follows that it appears from this return of the executor, which is attached as an exhibit to the evidence, and which constitutes a part of the auditor's report, that the executor received credit for these items. Furthermore, the decree of the judge in this case gives the executor credit for these items. Anyway, as the auditor gave the executor credit therefor,

and as the judge in the final decree gives him credit therefor, any failure of the auditor in his finding of fact No. 26 to specifically allow these items to the executor would at most be a harmless error, which does not demand a recommittal of this case to the auditor, and thus delay the winding up of this litigation.

In his finding of law No. 3 the auditor excluded evidence offered by the plaintiffs that the lands of the estate were worth the amount of the appraised value thereof in 1917, that from 1917 to 1921 the value of said lands increased double, and that since 1921 the value of said lands decreased one half, and that the lands would now bring about one third of what they would have brought in 1920. In his finding of fact No. 29 he found that the decreased value of these lands between 1920 and the time of the division of the same among the general legatees amounted to $23,504. The fifth ground of the motion to recommit is that the auditor erred in making his finding of fact No. 29, because it was based upon evidence which had been excluded by the auditor. The auditor further found in his report that the executor was not chargeable with this decreased value of these lands, and the trial judge approved this legal finding and conclusion. So, if we concede that the auditor erred in this finding of fact, for the reason assigned, it was an error which was not harmful to the executor, and did not require the recommittal of this case to the auditor.

The sixth ground of the motion to recommit is based upon the fact that the auditor found that the executor had collected $5,000 on a note of J. M. Willis due to the estate, and that this finding is without evidence to support it. Clearly this would furnish no ground to recommit the case to the auditor, but is a matter proper for exception. In fact the executor did except to this finding of fact, which the court approved, and in the final decree, with the consent of the plaintiffs, the court gave the executor credit for the amount so found against him by the auditor. So, if this finding was not based upon evidence, which is the case, and the judge was right in so holding, then the executor is not hurt by such finding. On the contrary, if the finding is supported by the evidence, then the executor should be charged with this collection. Taking either horn of the dilemma, the executor was not legally injured or damaged; and for the reason that this was a matter for exception to and not for recommittal of the report, and that the executor in

no event was hurt thereby, this ground of the motion to recommit should not have been sustained.

The seventh ground of the motion to recommit is that in the fifty-first finding of fact the auditor found that the executor collected from the Bank of Irwinville a time certificate of $2,163.72, belonging to the testator, and that this finding is without evidence to support it. If this finding of fact was not based upon evidence, this would furnish matter for exception to the finding, and not for recommitting the case to the auditor.

The eighth ground is that the auditor in his fifty-first finding of fact finds that some time between May 1, 1917, and February 1, 1919, the executor collected a note signed by himself for the sum of $830.24, and that this item is charged as cash in the hands of the executor, when the uncontradicted evidence shows that this note had not been collected at the date of the hearing. This note is the executor's own note. This ground of the motion to recommit is without merit, for two reasons, (1) that it should be charged to the executor as cash, he admitting that he is perfectly solvent; and (2) that if the auditor erred in making a finding not supported by evidence, this is a matter for exception and not for recommittal of the case to the auditor.

We deal with certain grounds to recommit together. These grounds are: (9) That in the 51st finding of fact the auditor finds that the aggregate collections by the executor, not including certain items therein referred to, from May 1, 1917, to February 1, 1919, aggregate $23,504.60, without specifying with what items the executor is charged, and without giving any information as to how he arrived at this aggregate. (10) That in said finding of fact the auditor finds that on February 1, 1919, the executor had in his hands from cash and collections $49,142.50, without giving the items going to make up such amount, so that said finding is too indefinite, vague, and uncertain to put the defendant on notice of what items he is charged with having collected, so that he can show that said aggregate is correct or incorrect. (11) That in said finding the auditor credits the defendant with authorized expenditures from April 24, 1917, to February 1, 1919, amounting to the sum of $9,881.15, but fails to give the items constituting said amount, and without showing what expenditures made by the executor during said period are allowed or disallowed, so that said

finding and report are indefinite, uncertain, and vague, and that it is impossible for the defendant to ascertain whether he has been correctly credited with the expenditures made by him; and that in said finding of fact the auditor credits the defendant with expenditures from February 1, 1919, to February 1, 1920, in the sum of $2,389.69; from February 1, 1920, to February 1, 1921, the defendant is credited with expenditures of $1,073.69; for the year from February 1; 1921, to February 1, 1922, he is credited with expenditures of $1,886.83; from February 1, 1922, to February 1, 1923, he is credited with expenditures of $1,001.28; and from February 1, 1923, to December 17, 1923, with expenditures of $1,083.96; and that said findings and said report do not show what items were included in said expenditures, nor what expenditures were allowed or disallowed by the auditor, so that said report is so indefinite and uncertain that it is impossible for the defendant to ascertain from an examination of said report what expenditures made by the executor the auditor deems to be legal or illegal. (12) That at the conclusion of his finding of fact No. 52 the auditor finds that on December 17, 1923, there was a cash balance in the hands of the defendant of $29,697.75, and nowhere in said report does the auditor show what items make up said sum, so that it is impossible for the defendant to ascertain with what items he stands credited so as to leave said balance. (13) That in the 53d finding of fact the auditor finds the "aggregate interest earned on various items of collections made by the executor from February 1, 1918, to February 1, 1919, inclusive, at 4-1/2 per cent. per annum from the respective dates of collection on each item, $384.68," which finding is too vague, uncertain, and indefinite to enable the defendant to ascertain what items he is charged with having collected, when he is charged with having collected them, the period of time for which interest was computed, or the amount of the collection upon which interest was computed. (14) That the report of the auditor is indefinite, and omits to pass upon all the issues and questions raised by the pleadings, in that said report fails to find or pass upon whether the expenditures for the respective amounts of $146.66 on May 15, 1920, $293.32 on June 6, 1922, and $146.66 on May 28, 1923, all payable to Turner & Dorminey, are found by the auditor to be unauthorized. (15) That the auditor omitted to find in his report whether the items referred to in the 26th finding

of fact were allowed or disallowed the executor. The 15th, 16th, 17th, 18th, and 19th grounds are but repetitions of some of the grounds above referred to.

It is true that the report of the auditor should show how he arrived at the gross amount which he finds the defendant indebted to the plaintiffs. Otherwise, it would be impossible for either party desiring to except to the gross amount so found, to ascertain from the report what items or claims are allowed or disallowed by the auditor. *Greer* v. *Andrew,* 133 *Ga.* 193 (65 S. E. 416). In cases of accounting, and in cases involving special issues, the general rule is that the report of the auditor should show in what way he arrived at his conclusion; in cases of accounting he should state the account at length, and in dealing with such special issues he should state the facts found by him, so that they will be intelligible without reference to the testimony; and where an auditor's report fails to find all the facts or to cover all the issues involved, advantage should be taken of such failure by motion to recommit rather than by exception, which if sustained, would leave the matter where it started. *Weldon* v. *Hudson,* 120 *Ga.* 699 (48 S. E. 130). The report involved in this case is not subject to the infirmities above referred to. Pendente lite the executor filed with the court in this case a report of all collections made by him and all expenditures for which he claimed credit. This report was introduced in evidence before the auditor. It is attached as an exhibit to the brief of evidence, and is made a part of the auditor's report. The plaintiffs contested a few of the various items of expenditure for which the executor claimed credit. They sought to charge the executor with certain amounts not embraced as debits in his said report. The executor's report shows the various items collected by him for the estate from May 1, 1917, to February 1, 1919. In this report the amount and date of each item collected are stated. To get the aggregate is a simple problem of addition. The auditor evidently added up these items, and reported the aggregate thereof in his 51st finding of fact as $23,504.60. In his report the executor admitted each and every item of collection charged against him in this aggregate. The executor set up no contention that any of the items in this report between these two dates was incorrect. There was no controversy between the parties as to the collections thus reported by the executor. The items

of these collections were numerous, and the most of them were small. To itemize them would make the report of the auditor, already large, much more voluminous. In view of these facts, we do not think it was necessary for the auditor to set out in his 51st finding of fact the various items composing the above aggregate of $23,504.60 with which he charged the executor.

The case should not have been recommitted to the auditor for lack of certainty in the finding, set out in the 52d finding of fact, that on February 1, 1919, the executor had in his hands "gross cash and collections $49,142.50," without giving the items composing said aggregate. This amount is made up of the items embraced in the 51st finding of fact. The case should not be recommitted, as contended by the defendant in the 11th ground of the motion to recommit, because the items of the aggregate of expenditures allowed the defendant in the 52d finding of fact are not given. In the executor's report the amount and date of each expenditure during these periods are given. The items of these expenditures which were disallowed by the auditor are set out in the 17th, 18th, 19th, and 20th grounds of his report. The amount and date of each of the disallowed items of expenditure are given in these grounds. The deduction of the disallowed items for any of the periods, from the collections made by the executor during such period, gives practically the total amount with which the auditor credits the executor during such period. It follows that the case should not have been recommitted on this ground.

The finding by the auditor, at the conclusion of the 51st finding of fact, that the executor had on hand, December 17, 1923, the cash balance of $29,697.79, without giving the items composing such balance, does not render it impossible for the defendant to ascertain with what items he is charged by the auditor, and with what items he stands credited by the auditor. For the reason hereinabove given, the report of the auditor sufficiently shows the debits charged to the executor and the credits allowed him. For the same reason the aggregate of interest charged to the executor in the 53d finding of fact is not too vague, uncertain, and indefinite. The amounts collected by the executor during the period named are set out in his said report, and the auditor charges him with interest thereon. The auditor allowed the executor credit for the amounts mentioned in the 14th ground of the motion to recommit. In his

report the executor claimed credit for these amounts, and in the finding of the auditor he allowed the executor credit for all expenditures claimed by him, except such as were disallowed by the auditor. These items do not fall within those disallowed. What is said in dealing with the fourth ground of the motion to recommit is applicable to this ground.

We need not deal in detail with the 15th, 16th, 17th, and 18th grounds of the motion to recommit, for, as we have stated above, these grounds are but repetition of the 9th, 10th, and 11th grounds of the motion. What is said touching the last-mentioned ground is equally applicable to the 19th ground of the motion to recommit, each being based upon the same facts.

The 20th ground of the motion to recommit is that the auditor erroneously charged the executor with interest from February 1, 1919, to December 17, 1923, at the rate of seven per cent. per annum, when the executor earned interest of only 4-1/2 and 5 per cent. per annum, all of which had been reported. This furnishes ground for an exception of law, and does not require a recommittal of the case to the auditor.

The 13th ground is that the auditor erroneously found, in his 6th conclusion of law and fact, that the payments made by the executor and set out in the findings of fact Nos. 18, 19, and 20 were incurred solely by the laches and refusal of the executor to distribute the estate, and were therefore improper charges against the estate. The error assigned is that some of the payments referred to in said finding were made by the executor in resisting a suit filed in the superior court of Ben Hill County, which court had no jurisdiction whatsoever of said cause, and as a matter of law it was the duty of the executor to resist the same. This would furnish matter for an exception of law, and would not require the recommittal of the case to the auditor.

From the foregoing it appears that the judge did not err in refusing to recommit this case to the auditor.

2. The court did not err in overruling the defendant's exceptions to the auditor's findings of law. The first exception of law is without merit, (1) because the ruling of the auditor therein set out was correct, and (2) because, if the auditor afterwards considered the evidence ruled out by him in his third finding of law, it was harmless, because both the auditor and the trial judge denied

the claim of plaintiffs based on this evidence. The auditor did not err in ruling out the testimony set out in the 7th and 8th findings of law. If the auditor erred in admitting the testimony set out in his 10th finding of law, the same was harmless for the reason that the auditor did not charge the executor with any more rents than he actually received from the lands of the testator. If the auditor erred in admitting the testimony set out in his 11th finding of law, said ruling was harmless inasmuch as both the auditor and the judge rejected the claim of the plaintiffs based on this testimony. If the ruling of the judge in disapproving the finding of law set out in the 16th finding of law by the auditor was erroneous for any of the reasons assigned, the same was harmless and does not require a reversal. We think that the ruling of the auditor set out in his 19th finding of law was correct, and that the defendant's exception No. 7 thereto was without merit. It follows that the judgment below should not be reversed for overruling all of the defendant's exceptions of law to the report of the auditor.

3. The executor filed exceptions to some of the auditor's findings of fact. The trial judge overruled certain of these exceptions, and to this judgment the executor excepts. We deem it necessary to discuss only a few of these overruled exceptions.

In his 39th finding of fact the auditor charged the executor with $5,000, the proceeds of a note which, the auditor found, was due by one Willis to the testator, and which the auditor found the executor had collected. In his 14th exception the executor challenged this finding of fact, upon the ground that it was without evidence to support it. This exception was well taken, but the overruling thereof does not require a reversal, because on the final hearing of the case, with the consent of the plaintiffs, the judge in the final decree relieved the executor of this charge. So the error in overruling this exception, and other exceptions making the same ruling, was effectually cured.

In his 8th finding of fact the auditor found that the executor had performed no extra services in connection with the administration of the estate, that the tenants to whom he rented the lands of the estate brought the rent to him without extra service on his part, and that the legatees divided the lands in kind among themselves without any service on his part, except his approval of the division. To this finding the executor excepted upon the grounds

that it was without evidence to support it, and that the uncontradicted evidence shows that the executor did perform extra services. The auditor does not seem to have meant by this finding that the executor had performed no extra services in connection with the administration of this estate. What he seems to have meant is that the executor performed no extra services in the ordinary and regular administration of this estate. This appears from his 41st finding of fact, in which he found that the executor had incurred personal expenses in connection with the first series of litigation, and with the adjustment of the income tax demanded by the Federal government, for which he had not been reimbursed. In this finding the auditor sets out the amount of these expenses, including compensation for the executor for the time consumed by him in connection with this litigation. Compensation for this extra service was allowed the executor. For this reason it appears that the auditor in the above finding, that the executor had rendered no extra services, meant that he had rendered no such services in the ordinary and regular administration of the estate. But, conceding that the auditor meant to find that the executor had rendered no services in extraordinary matters connected with the administration of the estate, the judgment disapproving the exception to this finding should not be reversed, because the auditor allowed the executor compensation for all extra service which was authorized and justified by the evidence. It may be conceded that it is inferable from the facts that the executor rendered such services; but such inference will not justify the grant of such compensation. The nature, character, extent, and value of the extra services must be satisfactorily shown. The evidence touching the rendition of extra services by the executor is set out in extenso in the statement of facts. An examination of this evidence fails to show any data which would authorize the finding of compensation for such services, other than was found by the auditor in his 41st finding of fact. But it may be said that the executor applied to the ordinary for compensation for these services, that the ordinary, after hearing the executor's application for such compensation and his sworn evidence in support thereof, passed an order allowing him $6,000 as extra compensation, and that the order of the ordinary, although not conclusive on the parties in interest (Code 1910, § 4067), furnishes at least prima facie evidence that the

executor was entitled to that amount. Conceding, but not deciding, that the ordinary had jurisdiction of this matter after the superior court, as a court of equity, had taken jurisdiction over the settlement of the accounts of this executor (Code 1910, § 4075), the burden would be upon the party attacking such order to show that the allowance was improperly made. *Hosher* v. *Fitzpatrick*, 146 *Ga.* 525 (91 S. E. 780). In an amendment to his answer to the petition in this case the executor sought to recover extra compensation. In this amendment he made practically the same allegations to establish his right to such compensation as he did in his petition to the ordinary for the allowance thereof. He prayed to be allowed as extra compensation, in addition to the regular compensation and special commissions allowed by law, the sum of $6,000, that he be allowed the sum of $2,184 for renting and collecting the rents for the lands of the estate, these rents amounting to $4,379.35, and the further sum of $437.95 for distributing the lands belonging to the estate. In support of his claim for extra compensation he was sworn as a witness before the auditor, and he undertook to narrate the facts upon which his claim for these large amounts of extra compensation was based. It can fairly be presumed that he stated the facts most favorably to himself, in order to establish his claim. His testimony shows that the order of the ordinary allowing him $6,000 as extra compensation was improvidently granted. In his testimony he states no facts and gives no data which support the finding of the ordinary and sustain his claim for the extra compensation sought in the above amendment to his answer. In view of this conclusion, any error committed by the auditor in this finding of fact, and by the trial judge in disallowing the executor's exception thereto, does not require a reversal of the judgment. The executor was fully heard upon his claim for compensation for extra services; and for the reasons hereinabove given he failed to establish his right to any more compensation for such services than was allowed him by the auditor.

In the 17th finding of fact the auditor found that all of the litigation brought by the legatees against the executor in 1921 and subsequently thereto was for the purpose of obtaining distribution of the estate, and was caused by the refusal of the executor to distribute the estate and make an accounting therefor. To this finding the executor excepts upon the ground that the same is con-

trary to and without evidence to support it, and because the petitions filed by the legatees in Ben Hill County and Irwin County show that said litigation was brought for the purpose of removing the executor and having a receiver appointed to take charge of and administer the estate. In his 6th conclusion of law and fact the auditor found that the payments made by the executor to his attorneys for services in this case, amounting to $2,000, to the clerk of the superior court for costs amounting to $116.93, and to his attorneys for expenses, amounting to $15.10, were incurred solely by reason of the laches and refusal of the executor to distribute the estate, that said payments were improper charges against the estate, and that the executor should not be given credit for them. The executor excepted to this finding, on the ground that it was without evidence to support it, that the executor had a right to employ counsel to protect the estate against unfounded suits, and that the items of costs referred to were incurred by the defendant in appealing certain litigation from the superior court to the Supreme Court, one of which was reversed. It is earnestly insisted by counsel for the executor that these payments to his attorneys are proper charges against the estate, and that the same should be allowed as credits to the executor. The record discloses that the plaintiffs brought a similar suit to the present one, in Ben Hill superior court, against the executor and his bondsman, for the accomplishment of the same purposes as those sought in the present suit. That suit was dismissed upon demurrer. The evidence fails to disclose what part, if any, of the above payments were paid by the executor to his attorneys for services in the suit in Ben Hill superior court. On the contrary, it appears that these payments were made for services rendered in the present case. The auditor and the judge were authorized to find that the litigation, which the auditor denominates as the second series of litigation, was brought about solely by reason of the laches and failure of the executor to distribute the estate as he should have done. The purpose of the litigation, embraced in this series, was to secure distribution of the estate in accordance with the terms of the will of the testator. It is true that to accomplish this purpose the plaintiffs sought to have the executor removed and a receiver appointed; and it is likewise true that the trial court removed the executor and appointed a receiver, and that this action of the judge was reversed. *Clements*

v. *Fletcher*, 155 *Ga.* 802 (118 S. E. 201). In defending this suit the executor not only contested his removal and the appointment of a receiver, but he denied the right of the plaintiffs to a settlement and accounting, and sought to defeat the same by filing a demurrer to their petition, which was overruled by the trial court, and the judgment overruling it was affirmed by this court. *Clements* v. *Fletcher*, 154 *Ga.* 386 (114 S. E. 637).

It is insisted by the executor that it was proper for him to employ counsel to resist the application of the plaintiffs for his removal and for the appointment of a receiver, when such application was unfounded, and to charge to the estate payments to counsel for such services. The purpose of supplying executors with legal advice is for the protection of the estate he represents. The object is not to extricate him from difficulties due to his own fault or misconduct. *Ross* v. *Battle,* 113 *Ga.* 742 (39 S. E. 287). Where there is no actual misconduct in the administration, but only a charge of it, the executor representing all the legatees should be allowed a reasonable amount to retain counsel in defending an unjust charge. *Armstrong* v. *Boyd,* 140 *Ga.* 710 (79 S. E. 780). The auditor and the trial judge were authorized to find from the evidence that the present suit was brought about by the fault and neglect of the executor in properly administering this estate. The main purpose of this suit was for an accounting and settlement. To accomplish this purpose the legatees sought to have the executor removed and a receiver appointed. If the executor had fought these features of the case alone, and had employed counsel for this purpose, he might well be entitled to credit for payments made to counsel for services rendered to accomplish this object; but the executor did not offer to account and settle, but on the contrary resisted the efforts of the legatees to secure an accounting and settlement. Certainly, in view of this situation, he should not be allowed expenditures for the services of his counsel in resisting the efforts of the legatees to secure an accounting and settlement. In the absence of evidence showing the value of the services of counsel to resist his removal, and to prevent the appointment of a receiver, no allowance should be allowed to the executor for payments for such services.

The other exceptions of the executor to the findings of fact by the auditor, and to his conclusions of law and fact, are without

merit. In view of the above rulings, the trial judge did not err in any of his rulings touching the exceptions of the executor to the findings of the auditor, and in the final decree granted in this case, so far as the executor is concerned; and the judgment of the court below should be affirmed, so far as the executor is concerned.

4. This brings us to consider the assignments of error complained of in the bill of exceptions brought by the plaintiffs. The plaintiffs contend that they are entitled to recover from the executor damages arising from a decline in the value of the lands devised them by testator, between the time when the executor should have given them these lands, and the time when he assented to the division thereof and put the legatees in possession. We do not think that the legatees are entitled to recover these damages.

In the next place, the legatees assert that the executor has forfeited all right to compensation, by his failure to make annual returns and by his conduct in the administration of this estate. It is true that where an executor fails to make his annual returns, as required by section 3992 of the Code, as amended by the act of 1920 (Ga. Laws 1920, p. 79), he forfeits all commissions for transactions during the year within which no return is made. Civil Code, § 4069; *Lane* v. *Tarver*, 153 *Ga.* 570, 584 (113 S. E. 452). By a special order, entered on the minutes, an ordinary may relieve the executor from such forfeiture. *Doster* v. *Arnold*, 60 *Ga.* 316; *McBride* v. *Hunter*, 64 *Ga.* 655; *Lane* v. *Tarver*, supra; Civil Code, § 4069. In this case the executor procured such order. Therefore he was relieved from the forfeiture of compensation by reason of his failure to make annual returns. It can not be said as a matter of law that he forfeited all compensation by reason of his neglect or misconduct in the administration of this estate. Under the evidence and facts of the case, it was a question of fact to be determined in the first instance by the auditor, and in the second instance upon exception to such finding by the judge. *Adair* v. *St. Amand*, 136 *Ga.* 1 (7) (70 S. E. 578). So while the auditor found that the executor had forfeited his compensation, we can not say that the judge erred in approving an exception to this finding of fact, and upon hearing the case, which was submitted to him without the intervention of a jury, in holding that the executor had not forfeited all compensation. It does not appear that the final decree allows the executor any commissions upon the lands which

were distributed in kind; and under the facts in this case he should not receive any compensation for this distribution of these lands.

The executor neglected, in his exceptions to the auditor's report on matters of fact, to set forth in connection with each exception the evidence necessary to be considered in passing thereon, or to point out the same by proper reference, or to attach it as exhibits to his exceptions. Counsel for plaintiffs moved to dismiss his exceptions of fact, for this reason. Thereupon the executor amended his exceptions so as to meet this objection. To the allowance of this amendment counsel for plaintiffs objected, but the court overruled their objection and allowed the amendment. To this ruling the plaintiffs excepted. All parties may, at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or substance, provided there is enough in the pleadings to amend by. Civil Code, § 5681. In view of this broad and liberal provision, we think that where a party files exceptions to an auditor's report, but the excepting party fails to set out or refer to the evidence in such exception, or to attach it as an exhibit, such exception can be amended to meet this defect. Whether new grounds of exception could be added is not now for decision. See *Sizer* v. *Melton,* 129 *Ga.* 143 (58 S. E. 1055); *Faucett* v. *Rogers,* 152 *Ga.* 168 (7) (108 S. E. 798).

In view of the foregoing rulings, the judgment on the writ of error brought by the plaintiffs should be affirmed.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*

ATKINSON, J., dissents from the ruling announced in the first division, and subdivision (*e*) of the third division, of the majority opinion. This dissent, in so far as it relates to the ruling announced in the first division, is a concurrence in the dissent of Russell, C. J., relating to the assignment of error on the judgment denying the motion to recommit the case to the auditor.