## Belle G. Singleton Ward v. Wright, et al.

(Decided October 27, 1922.)

### Appeal from Trigg Circuit Court.

1. Wills—Disavowal of Facts Upon Which Judgment is Based.—One who has caused an action to be instituted to construe a will, and has alleged in his petition that certain parties to the action are blood relatives of the testator, and has sought a construction of the will favorable to his contention that an absolute estate in the property of the testator passed to him under the will, but has failed in his efforts to obtain such an adjudication, will not be permitted, after judgment has been rendered, to disavow or repudiate the facts or allegations on which the judgment is based, when he himself has placed them in the record.

2. Wills—Repudiation of Allegations With Reference to Property Listed.—The widow of a testator, who was executrix of his will and who filed an inventory of his estate and listed as assets thereof Liberty Bonds of the value of $550.00 and war savings stamps of the value of $150.00, will not be permitted, after a construction of the will has been obtained in proceedings that she initiated, to repudiate her former allegations with respect to the property so listed and assert a claim of ownership to it.

3. Wills—Support of Life Tenant.—The corpus of a devised estate cannot be subjected to the maintenance or support of the life tenant unless the will, in express terms or by implication, authorizes such subjection.

4. Wills—Accounting to Remaindermen.—Where a will does not authorize the life tenant to use the corpus of the estate for his support and maintenance, he will be required to account to the remaindermen for all property received by him under the will.

not necessarily consumed in his use of it, but for such property as is necessarily consumed in its use he will not be held accountable to the remaindermen.

5. Wills—Services—Attorneys' Fees.—An executrix who employed counsel to represent her in obtaining a construction of a will, under which she claimed an absolute estate as against the other parties to the litigation who were claiming that she took only a life estate, cannot charge the estate with counsel fees incurred in seeking to establish her claim, but may charge it with fees incurred for services rendered the estate and not rendered to her individually.

6. Wills—Court Costs.—Court costs that are incurred in obtaining a construction of a will are chargeable to the estate of the testator, notwithstanding the suit for the construction was instituted by an executrix for the purpose of establishing her right to an absolute estate in the property devised.

JOHN C. DUFFY and T. G. SKINNER for appellant.

ALBERT MORSE, JOHN C. GATES and JOHN G. MILLER for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming on original and cross appeals.

On the first appeal of this case, reported in 190 Ky. 657, it was held that appellant, Belle G. Singleton, was given a life estate in the property of her deceased husband, William H. Singleton, under the will as there construed. On the return of the case to the circuit court appellant, in her own name and not as executrix of her husband's will, tendered and moved to file an amended petition and an inventory of the estate of William H. Singleton, to the filing of which appellees, the remaindermen under the will, objected. On the hearing of that motion the trial court refused to order the amendment and exhibit filed, but awarded judgment against the estate for the court costs of the litigation including the costs of the former appeal to this court. From the order rejecting the amended petition Belle G. Singleton is prosecuting an appeal, and the appellees have been allowed a cross appeal from the judgment of costs.

The allegations of the original petition, that appellees were the blood relatives of appellant's deceased husband and were found in the state of Tennessee by her former attorney and induced to come to Kentucky and claim an interest in his estate, were withdrawn in the first paragraph of the amendment, and in lieu thereof appellant

denied sufficient knowledge or information to form a belief as to whether they were related in any degree whatever to her husband. This attempt to deny appellees' kinship to William H. Singleton is diametrically opposed to appellant's former petition, and the ground of objection to the filing of this paragraph is that she should not be permitted to take such action. In considering the objection it must be remembered that the first allegations were made for the purpose of obtaining a construction of Singleton's will, and that appellant has, from the beginning of this litigation, claimed an absolute estate in the property therein devised; furthermore, that there was apparently some doubt in her mind, when the suit was filed, as to the interest that she took under the will, and that her purpose in instituting the proceeding was to obtain an adjudication favorable to her claim of an absolute estate in the devised property. As a result of her action the rights of appellees under the will were defined, and now, by the first paragraph of the amendment, she is attempting to undo that which she brought about. This she cannot do, for it needs no elaboration of any principle of law or equity nor reference to any requirement of fair dealing to say that one cannot, after final judgment is rendered, disavow or repudiate the facts or allegations on which it is based when he himself has placed them in the record.

The second paragraph of the amendment alleges that William H. Singleton, prior to his death, purchased Liberty Bonds of the par value of five hundred fifty ($550.00) dollars, and also war savings stamps of the par value of one hundred fifty ($150.00) dollars, and gave them to appellant as a present, and that she is now the owner of them and for that reason did not include them as an asset of his estate in the inventory tendered with the amended petition. Under these averments it would ordinarily be competent to prove the gift, but here again appellant is precluded by her former statements, for it appears that, in response to a rule issued by the trial court before the first appeal, she filed an inventory of the estate that had come into her hands as executrix, and therein stated that at the death of her husband there was "and now is deposited for safekeeping, in the Bank of Cerulean, Cerulean Springs, Ky., Liberty Bonds of the amount of $550.00, and war savings stamps to the amount of $150.00." She thus certified that the bonds and war savings stamps were a part of the estate of the

testator, and she will not now be permitted to say that they were not a part of his estate but belonged to her, having been given to her by him.

In the third paragraph of the rejected amendment appellant seeks to charge the corpus of her husband's estate with certain expenditures made by her, and also with such amounts as may be sufficient in the future for her proper maintenance and support.

The contention that she is entitled to use the corpus of the estate, so far as may be necessary for her support and maintenance, rests primarily on an excerpt from the opinion on the first appeal, where, in connection with the statement that at her death the property of her husband would descend to his heirs at law, it was said: "It is clear that the will gives the widow no power to dispose, by will or otherwise, of such part of the estate as may not be consumed by her, for it contains no provision to that effect," etc.  It is earnestly argued that the meaning of this language is that she is entitled to dispose of and use the corpus of the estate to the extent that it may be necessary for her comfortable maintenance and support. We are referred to many decisions of this court as judicial sanction of this interpretation.  An analysis of all the authorities cited would not illuminate the point at issue, but a few of them may be referred to as illustrating the difference between the will under consideration here and other wills under which we have held that the corpus of the estate may be used, if necessary, for the maintenance and support of the life tenant.

In Anderson, etc. v. Hall's Admr., etc., 80 Ky. 91, the testator gave to his wife all of his property, real and personal, giving her the right to sell it and reinvest the proceeds as she might desire, but providing that at her death any portion of his estate *undisposed of* should go to his daughters.  It was held that the will gave to the widow a life estate with the remainder of the property not disposed of by her at her death to the three daughters.

In McClelland's Exr. v. McClelland, 132 Ky. 284, the testator, after making certain specific bequests, gave to his wife a life interest in three-fourths of his estate, but directed her executor or administrator at her death to turn over to his brother and sister and their descendants *whatever remained of the residue,* and it was held that the wife had the right to use the corpus, if necessary for her support.

In Commonwealth, etc. v. Manuel, Executor, 183 Ky. 48, the testator in one clause gave to his wife the entire remainder of his estate, but in a subsequent clause provided that should there be any of his estate remaining after the previous provisions had been carried into effect it should go to certain designated persons. And we held, in construing the entire will, that the wife took a life estate with the right to use not only the income but also so much of the corpus as might be needed for her support and maintenance.

It will be noticed in each of the cases referred to, as in every other case where the holder of the life estate has been permitted to use the corpus for maintenance and support, that the language of the will clearly authorized such use and indicated that it was the intention of the testator to subject the corpus of the estate, if necessary, to the burden of maintaining the life tenant.

An illustrative case is Trustees, etc. v. Mize, 181 Ky. 567, where the language of the will evinced the purpose to allow the consumption of a part of the corpus for the maintenance of the life tenant, if necessary; and another is Lindenberger v. Cornell, et al., 190 Ky. 844, where the testator provided "that so much of my residuary estate as shall remain upon the death of my said wife . . . shall be divided into three equal parts," etc. In the latter case we held, conformable to the ruling in the Mize case, that the language of the will clearly indicated that the testator contemplated the possible necessity of the consumption of a part of the corpus in the maintenance and support of his wife, and she was, therefore, authorized so to use it. To the same effect is Clore, et al. v. Clore, et al., 184 Ky. 83, and many other authorities that might be cited.

It is clear, from the authorities cited, that where the will, in express language or by implication, authorizes the subjection of the body of the estate to the support of the life tenant, the right so to use it can not be denied, but it is also well settled that the right must be conferred by the will otherwise it is non-existent. We do not find in the will, in controversy any language that manifests on the part of the testator a purpose to authorize the use of the corpus of his estate for the maintenance and support of appellant; nor does the language of the opinion on the first appeal, relied on by appellant, warrant the interpretation that is sought to be given it in that respect. The word "consume," as used in the opinion, has a well de-

fined meaning as applied to property devised to a life tenant; it means such property as would naturally wear out or be destroyed or consumed in the use of it.  In Davison's Admr., et al. v. Davison's Admrx., 149 Ky. 571, we held that wheat, corn, fodder, and other personal property would necessarily be consumed in their use, and the holder of the life estate would not be accountable to the remaindermen for that class of property, but it was also decided in that case that other species of property, including the cash on hand, would not necessarily be consumed in their use, and although the life tenant had the right to use such property, it should be turned over to the remaindermen, when the life estate terminated, in the condition received, natural wear and tear excepted.

It is our opinion, from a consideration of the authorities referred to and many others of similar import, that appellant took merely a life estate in the property devised; that she has the right to use it, and such of it as is thus necessarily consumed she will not be accountable for, but the other property not necessarily consumed in its use she must be held accountable for, though allowed to use it.  The income from the money and other property in which she has a life estate is of course hers absolutely.

With regard to the items of credit set up in the amended petition and in the inventory sought to be filed, it may be observed that, as executrix, she is entitled to be credited with such sums as she paid for funeral expenses of her husband, taxes, and other debts and liabilities of his estate, and for the cost of administering the estate up to the time she ceased to be executrix of it. She, however, does not set up in her amendment any such items, though some of them are included in the inventory which we find in the record but which was not made a part of the amendment.  The third paragraph of the amendment seeks to charge the corpus of the estate with sufficient funds to maintain and support appellant, and this, as we have seen, cannot be done.  That paragraph, however, as well as the other two, did not show any sustainable or valid ground for relief on behalf of appellant, and, therefore, the objection to the filing of the amendment was properly sustained.

Appellant may settle her accounts as executrix in this proceeding, and, as we have indicated, she is entitled to credit for all proper expenditures made by her as such executrix, but in the settlement she should be charged

with such of the personal property that came into her hands as would not necessarily be consumed in its use, to the extent that she has disposed of it. She claims, as chargeable against the estate, though not in the amendment, attorney's fees approximating five hundred fifty ($550.00) dollars, four hundred fifty ($450.00) dollars of which she paid to her former attorneys, and one hundred ($100.00) dollars of which has been paid to her attorneys engaged after the reversal of the judgment on the first appeal. No part of the hundred dollars is chargeable to the estate of the testator, since it is an obligation incurred by appellant for the purpose of prosecuting her individual claim under the will. The services of her former counsel, it would seem, were also largely directed to the task of establishing rights claimed by her individually, although the action in which the services were rendered proceeded in her name as executrix. Under this employment some service was doubtless rendered to her as executrix, and for that service the estate should pay. The extent of that service we are unable to determine, but in the settlement of her accounts the fee of four hundred fifty ($450.00) dollars will be divided between her and the estate in proportion to the respective services rendered. Shields, et al. v. Shields, Exor., 192 Ky. 555.

The costs of this litigation up to the time of the reversal of the judgment were incurred in obtaining a construction of the will and in defining the rights of the litigants thereunder, and, except as to the attorney's fees referred to, they were properly adjudged against the estate.

The judgment is affirmed on the original and cross appeals.