### OGDEN et al. v. SHROPSHIRE & ADKINS et al.

### No. 7520.

Court of Civil Appeals of Texas. Austin.

Feb. 18, 1931.

Rehearing Denied March 31, 1931.

(joining therein as parties defendant the residuary legatees under the Henderson will), to recover six items of attorney's fees, aggregating, $6,775, for services rendered by appellees to the executor. The trial was to a jury upon special issues, and the verdict and judgment were in favor of appellees upon each of the items in the following amounts, the first column representing the amount sued for and the second the amount of the verdict and judgment:

| | | |
|---|---|---|
| 1. Removal suit in county court | $2,500.00 | $750.00 |
| 2. Removal suit in the district court | 2,500.00 | 750.00 |
| 3. J. H. Ogden et ux. v. estate | 1,000.00 | 500.00 |
| 4. Mrs. Mears v. estate | 200.00 | 100.00 |
| 5. Luke Williams v. estate | 75.00 | 50.00 |
| 6. General advice | 500.00 | 350.00 |
| | $6,775.00 | $2,500.00 |

Two of the residuary legatees (Margery and Elizabeth Goodwin, who own one-half of the residuary estate) have appealed; the other residuary legatee (Lucy M. Wooten, who owns the remaining one-half of the residuary estate) has not appealed.

The fourth and fifth items are not attacked. The first two items covering services in two removal suits brought by the residuary legatees, one in the county and the other in the district court, are assailed by the residuary legatees on the ground that the services rendered were personal to the excutor and not in the interest of the estate. The third item is assailed by the residuary legatees on the ground that the services were not rendered in good faith for the estate, but in the interest of the executor in seeking to force an unreasonable compromise of the suit, which was in favor of his brother and his brother's wife, for personal injuries to the latter; and further because the executor was disqualified to represent the estate in said cause, on the ground that he was adversely interested and had made himself a party to the plaintiffs' cause by signing their cost bond. The sixth item is assailed by appellants on the grounds: (a) That the evidence will not support a judgment for any amount thereon; and (b) because the amount awarded is excessive.

Since the first three items are more or less interrelated as to their pertinent facts, we will make a brief statement of the evidence as it relates to these items, without attempting to segregate it.

Henderson, a widower since 1917, advanced in years and childless, had accumulated an estate in excess of $100,000. He died August 30, 1920. His will, a very lengthy document, was executed May 9, 1925, with an added codicil executed November 13, 1925. E. L.

Winfrey & Lane, of Dallas, for appellants.

Shropshire & Adkins, of Brady, and Wilkinson & Wilkinson, of Brownwood, for appellees.

McCLENDON, C. J.

Appellees, a firm of lawyers, sued E. L. Ogden in his capacity as independent executor of the will of F. W. Henderson, deceased

Ogden, an old business friend and acquaintance, was named independent executor of the will without bond, and was given very wide discretionary powers, including the employment of attorneys and the settlement of claims against the estate. Hon. F. N. Newman, who had been Henderson's attorney for a number of years, was engaged by the executor to probate the will and represent the estate generally. The will was probated in October, 1928, and Ogden then qualified as executor. Among the claims against the estate was a suit by J. H. Ogden (a brother of the executor) and his wife for personal injuries to the latter sustained in an automobile accident on the 8th day of August, 1926; Mrs. Ogden being a guest of Henderson in the latter's automobile when the accident occurred. This suit was not filed until August 7, 1928, just one day before the claim would have been barred by limitation, and twenty-three days before the death of Henderson. Whether Newman had been consulted by Henderson in regard to the suit does not appear, but in all probability he had, as he appears to have been Henderson's general legal adviser.

With reference to Judge Newman's employment in the J. H. Ogden suit, the executor testified:

"Mr. Newman was my attorney. I told him to go ahead and handle it just like he wanted to. As I was the executor, and the plaintiff was my brother, I thought the matter should be handled in his discretion."

Judge Newman and Lane (member of a Dallas firm of lawyers representing some of the residuary legatees) made an investigation of the law and facts in the J. H. Ogden suit, and reached the following conclusions: That the suit ought to be contested, both from the viewpoint of liability and amount; that the injury sustained would not warrant a settlement, even conceding liability, in excess of $5,000; and that it was to the best interest of the estate that the cause be tried at the January, 1929, term of court. They prepared and filed on January 4, 1929, an answer raising several questions of law by demurrer, and various issues of fact by special pleas in avoidance. This answer was withdrawn, Judge Newman withdrew from the case, and the executor signed as surety the cost bond of the plaintiffs in January, 1929. The circumstances surrounding these withdrawals were, however, excluded from the picture presented by the statement of facts. The attitude of the executor towards this suit appears to have been the initial cause of strained relations between Lane and the executor, and a great deal of correspondence ensued between them. A large part of this correspondence was excluded, and is only preserved by bills of exception; however, it sufficiently appears from the statement of facts that the executor wrote Lane, stating unequivocally that he had settled the Ogden suit for $7,500;

that Lane demanded that he plead limitation to the Mears claim, and he replied that he would not do so, because he knew Mr. Henderson, if living, would not file a plea of limitation; that Lane charged the executor with mismanagement in converting interest-bearing securities to the amount of some $80,000, and depositing the proceeds in noninterest-bearing account in a bank in which the executor was a stockholder and director; and that the executor was using an automobile belonging to the estate for his own private purposes.

The Mears claim arose out of the following facts: Mrs. Mears had acted as housekeeper for Henderson for forty-one months, terminating some three years prior to Henderson's death. She claimed an indebtedness of $4,100 against the estate for her services. Lane, who had made some investigation of the facts, contended that Henderson had settled with Mrs. Mears by giving her a check for $100 marked "payment in full," and that he had during her employment paid her $15 per month by checks, and had furnished her her board; and further that, if there were any liability, it had accrued at the time her employment ceased, more than two years prior to Henderson's death, and was therefore barred by the two-year statute of limitation.

The Luke Williams suit arose out of a claim by the plaintiff, who had been chauffeur for Henderson for a number of years, that one of two automobiles belonging to Henderson had been given to him by Henderson.

Subsequently to the January, 1929, term of the district court, the executor made a compromise agreement with his brother by which the damage suit was settled at $7,500, conditioned upon the approval by the district court, and the money was deposited in bank subject to such court approval. The executor's letter to Lane, notifying him of the settlement, did not inform him of the conditional clause.

On April 11, 1929, the residuary legatees brought suit in the county court, seeking removal of E. L. Ogden as executor. The grounds of removal were in substance: (1) wasting the assets of the estate in depositing in noninterest-bearing general deposit the sum of $80,000 of the estate's funds; (2) using personally two Chrysler automobiles belonging to the estate; (3) improper action in settling the J. H. Ogden suit; (4) disqualifying himself as executor by signing as surety the cost bond in the J. H. Ogden case; (5) refusal to answer letters of Lane calling for a statement of the condition of the estate.

An amended petition, seeking to enjoin the executor from paying out money of the estate, was filed May 11, 1929, and temporary injunction was granted the same day, but was shortly thereafter dissolved.

On May 9, 1929, suits were filed by Mrs. Mears and Luke Williams against the executor, and on the same day the executor wrote identical letters to two of the residuary lega-

tees notifying them of the bringing of these suits. On May 11, 1929, the executor, through appellees as his attorneys, filed answers in each of these suits impleading the residuary legatees and an intervention in the J. H. Ogden suit, setting forth in detail his action in compromising the suit at $7,500 subject to the court's approval, and asked for such approval. The residuary legatees were not sought to be impleaded to this intervention, and neither they nor their attorneys notified of its filing.

This intervention alleged that, before the suit was filed, J. H. Ogden and Henderson "approached E. L. Ogden and discussed with said E. L. Ogden the merits of the claim of the plaintiffs, presented in this suit," and that Henderson instructed the executor to make such settlement thereof as would be satisfactory to the plaintiffs; that, when the suit was filed, Henderson again asked the executor to make settlement satisfactory to plaintiffs; that the suit was filed before Henderson's death merely to arrest the statute of limitations; that the suit was for $50,000 and the injuries to Mrs. Ogden "may justify an award of a large sum of money as compensation"; that the residuary legatees had expressed a willingness to settle at $5,000; that the executor did not answer at the former term "because he hoped to settle or compromise, as requested to do, by deceased"; that the residuary legatees desired him to answer at the former term, and, in. declining, he simply exercised his statutory right (R. S. art. 3437); that the residuary legatees "have been notified of the above settlement of the claim, and they have been formerly active in resisting the claims of plaintiffs herein; and knew of the pendency of this suit." Prayer was for full ratification and confirmation of the settlement agreement.

The residuary legatees instituted a removal suit in the district court upon substantially the same grounds as those in the county court suit, but additionally sought a receiver of the estate. The petition in this suit was verified in Dallas by Lane May 18, 1929, was presented to the district judge May 20, 1929, and hearing on the receivership application set for May 21, 1929.

In explanation of the filing of this suit, Lane testified: "I did that because of a letter (by the executor) written to my clients that he would not plead limitations to the Mears claim, and he was going to make some settlement of it, and my clients were objecting to his controlling his brother's suit." He also explained that, on account of a mistake in the citation, the county court suit would have to go over to the July term of court.

The evidence is conflicting as to exactly what transpired at the hearing May 21, 1929, in the receivership matter. The conflict, however, we regard as unimportant. It is reasonably clear that Lane was satisfied with the executor's explanation of his handling of the estate's funds; that the executor agreed to let Lane effect a compromise of the Ogden and Mears suits; and that the executor gave as an explanation for not answering letters of Lane regarding the estate that he had been insulted by Lane on a previous occasion.

Lane concluded to drop both removal suits, and paid the costs in the county court on that day, and testified he thought he left instructions for both suits to be dismissed. Nothing further was done in either case, except that appellees filed an answer for the executor in the county court case on May 25th, and both suits were later formally dismissed. Lane effected a settlement of the Ogden suit for $6,000 and of the Mears suit for $600. The Luke Williams suit was settled by letting plaintiff have the automobile he claimed. The Mears suit had been so pleaded as to avoid limitation.

We sustain the contention that the evidence does not warrant charging the fees for services in the Ogden damage suit to the estate, upon two grounds:

■ (1) When the executor signed the cost bond, obligating himself personally for the costs, he thereby assumed a direct pecuniary interest in the result of the suit adverse to the estate, and to that extent he made the litigation his own.

■ (2) The entire record shows that this employment was not in the interest of the estate, but to effect a settlement in excess of the amount that his attorney, Judge Newman, and the residuary legatees, who ultimately had to bear the expense of such settlement, felt the facts would warrant. In announcing this conclusion, we do not hold as a matter of law that the executor was disqualified to represent the estate on the sole account of his relationship to the plaintiffs. His testimony, however, shows that he himself recognized an actual disqualification and left the entire matter to Judge Newman on that account. His subsequent conduct placed Judge Newman in such position that he felt it necessary to withdraw from the case, and the later employment of appellees appears clearly to have been for the purpose of effecting through court approval a settlement which the executor made with his brother, and which was never carried out.

■ Appellees seek to hold the estate on the well-recognized legal doctrine that an executor or trustee, in a proper case, may apply to the district court for advice regarding his duties, and is entitled, in such case, to reasonable attorney's fees incurred therein. In such a proceeding the executor appears in an impartial capacity, submits the facts to the court, and asks for a decree as a guide to his future conduct. Those affected by such decree are necessary parties to the proceeding, otherwise the decree would be nudum pactum.

The intervention in the Ogden damage suit cannot be brought within this rule. No advice or counsel of the court was sought in that proceeding, but its sole purpose as expressed on the face of the pleading was to obtain a court order approving a previous act of the executor; and the residuary legatees were not sought to be made parties to such order. The will was very explicit in the ample powers it gave the executor to settle claims against the estate. There was no occasion for judicial construction in this regard. If the executor was not disqualified, the will committed to his discretion alone the disposition of the suit, and that discretion could not be reviewed except for fraud or palpable abuse. The only issue upon which the advice of the court might properly have been sought was whether the executor was disqualified to exercise the discretionary powers in this instance. In such proceeding the court, upon deciding against disqualification, would relegate the matter to the executor, as the discretion was vested by the will in him and not in the court. On the other hand, if the decision was in favor of disqualification, the court should then make proper provision to protect the estate. Neither this nor any other character of advice was sought by the executor. If it had been, the services rendered by his attorneys would have been of a different character from those for which recovery was sought and obtained.

■ With reference to items 1 and 2 covering services in the two removal suits, we have reached the conclusion that the judgment should be reversed and the cause remanded because of the exclusion of the correspondence between the executor and the residuary legatees and their attorneys, and the testimony of Judge Newman and Lane detailing what transpired at the January, 1929, term of court with reference to the Ogden damage suit, and the circumstances surrounding Judge Newman's withdrawal from that case.

■ Generally speaking, the propriety for allowance of attorney's fees to an executor or administrator depends upon whether the expense was incurred in a proper administration of the estate.

A strict legal application of this rule would deny such allowance in any suit where the propriety of the official acts of the executor or administrator or his further right to administer the estate are drawn in question; for in such action the executor or administrator appears in the role of a private litigant defending his own acts or right to retain his appointment. See the following Texas cases upon this subject: Rowe v. Dyess (Tex. Com. App.) 213 S. W. 234; Id. (Tex. Civ. App.) 177 S. W. 523; Richardson v. McCloskey (Tex. Civ. App.) 261 S. W. 801, and authorities there collated.

The relation of an executor or trustee, designated by the owner to administer his property or to perform services with regard to it, differs in one essential respect from that of an administrator or other officer appointed by a court. In the former case, the person appointed "undertakes an office for another in relation to his property," and his right to reimbursement for all reasonable expenses or losses incurred, in the proper administration of the estate, are allowed him upon broad equitable principles. See Perry on "Trusts" (7th Ed.) vol. 2, § 910.

Consequently, it has been held that attorney's fees will be allowed in a removal proceeding, where it appears that the executor or trustee was blameless and the suit was unfounded or vexatious. See A. & E. Ency. of Law (2d Ed.) vol. 28, p. 1091.

■ The authorities in other states do not seem to be in entire accord as to the rule applicable where the executor is himself not free from blame, and there is no final adjudication adverse to him. In some cases the allowance is made upon the theory that plaintiffs have not justified their suit. In others the right to allowance is made to depend upon whether the plaintiffs had just ground to proceed against the executor, and a settlement or adjustment beneficial to the estate resulted. In this latter holding we concur. The following decisions are fairly illustrative of the several holdings: Clements v. Fletcher, 161 Ga. 21, 129 S. E. 846; In re Wilson's Estate, 97 Neb. 780, 151 N. W. 316; In re Walsh's Estate, 80 N. J. Eq. 565, 74 A. 563; In re Arnold's Estate, 252 Pa. 298, 97 A.. 415; Goode v. Reynolds, 208 Ky. 441, 271 S. W. 600, 63 A. L. R. 631; Ward v. Wright, 197 Ky. 148, 246 S. W. 123; Ross v. Battle, 113 Ga. 742, 39 S. E. 287; Armstrong v. Boyd, 140 Ga. 710, 79 S. E. 780; Moses v. Moses, 50 Ga. 9; Sherman v. Leman, 137 Ill. 94, 27 N. E. 57; Smith v. Kennard, 38 Ala. 695.

In the last case cited the Supreme Court of Alabama applied the rule that, where protracted litigation "was caused by the equal fault of both parties," one half of the executor's counsel fees were allowed as costs of administration, and the other half imposed on the executor individually—a proper disposition of the matter, we think, in view of the fact that the right to the allowance as an expense of administration rests upon equitable grounds.

In the case before us, it is clear that the executor took an improper position in at least two respects: In his attitude toward the Ogden damage suit; and in his announced refusal to plead the statute of limitations to the Mears suit, even though such plea might have been good. It also seems clear that the removal suits brought about an adjustment of all controversies between the executor and the residuary legatees, which adjustment

benefited the estate at least as regards the Ogden damage suit.

Whether the suits might have been avoided, if Lane had pursued a different course, and one which might be held to be more reasonable, is not made clear by the evidentiary picture presented by the statement of facts. Upon a full development of the pertinent facts including the above-excluded testimony and correspondence, the trial court will be enabled to determine what fact issues should be determined by the jury in order to apply the proper rules of law to the controversy.

█ We sustain the above contentions relative to item 6 for general advice.

The executor, offered as a witness by plaintiff, testified that, outside of the specific suits mentioned above, he "did not call upon Mr. Shropshire for anything."

The only other testimony upon this item was that of Mr. Shropshire, which we quote in full:

"As to what other services I rendered Mr. Ogden that are not included in these suits that we have been talking about, from early in the year until sometime in November when we presented the bill: Well, whenever any question would come up as to his handling of the estate he would appeal to me, and frequently I would advise with him as to the case, and my advice with him during these months was frequent as to matters that arose. Everything that came up about the estate that he was not satisfied about he would counsel with me about it as an attorney. That was frequent, tolerably frequent. I can remember some particular things. He talked to me one time about inheritance taxes, and also the income tax law. He talked to me about claims the estate owed, or at least claims presented against the estate. I think some, but I could not remember the details of things that arose. Mr. Ogden was pretty well prepared to handle this matter, and seemed to be a man of good intelligence."

The evidence furnishes no basis for the judgment on this item.

█ The only other questions raised by the appeal relate to the exclusion of deposition evidence of two Dallas attorneys in answer to hypothetical questions in regard to the value of appellees' services to the estate. The questions were not only long and involved, but embraced mixed issues of law and fact, for which latter reason we hold the answers were properly excluded.

As to items 4 and 5 and as to one-half of items 1, 2, 3, and 6 (being the amount of said items chargeable against Lucy M. Wooten's share in the residuary estate), the trial court's judgment is affirmed. As to the remaining half of item 3, the trial court's judgment is reversed, and judgment is here rendered for appellants. As to the remaining one-half of items 1, 2, and 6, the trial court's judgment is reversed and the cause remanded.

Affirmed in part, and in part reversed and rendered, and reversed and remanded.